IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TILL S. DERR, KAI DERR, KATJA DERR,
and URSULA MARGRET DERR                                             PLAINTIFFS

v.                                                    CAUSE NO. 1:13CV14 LG-JMR

THOMAS L. SWAREK and
THOMAS ANTHONY SWAREK                                              DEFENDANTS

### MEMORANDUM OPINION AND ORDER GRANTING
### DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

BEFORE THE COURT are cross-motions for judgment as a matter of law filed by the parties in this lawsuit. Plaintiffs seek to enforce a foreign judgment entered in their favor by a German court. The defendants resist enforcement of the judgment because they assert the principles of comity do not support enforcement. Defendants argue that the German court did not recognize the legal effect of the Swareks' voluntary dismissal with prejudice of Hermann Derr in a parallel lawsuit in Mississippi. In addition, because the Swareks' dismissal came before the German court acted on the matter, the German court should have given the dismissal *res judicata* effect. After consideration of the submissions and the relevant law, it is the Court's opinion that it should not grant comity to the German court judgment. Accordingly, the Swareks' Motion for Judgment on the Pleadings will be granted.

FACTS AND PROCEDURAL HISTORY

The plaintiffs in this case are citizens of Germany and the heirs of Hermann P. Derr. Hermann and his Mississippi corporation, Derr Plantation, Inc., accepted

an offer in 2005 made by the defendants, the Swareks, to lease and purchase a farm owned by Derr Plantation in Mississippi.  When Derr Plantation did not honor the lease/sale agreement, the Swareks filed a complaint against Hermann and Derr Plantation for specific performance and damages in the Chancery Court of Issaquena County, Mississippi.

Hermann died in 2006, and the Swareks filed a motion to substitute Hermann's estate for Hermann in his individual capacity.  The Chancery Court did not rule on the motion.  The motion to substitute, and a renewed motion three years later, were rendered moot when the Swareks withdrew them after dismissing their claims against Hermann with prejudice on May 10, 2010.

Meanwhile, on March 9, 2009, the Derr Heirs filed a complaint in the Regional Court in Düsseldorf, Germany against the Swareks.  The Derr Heirs sought a declaration that the Swareks had no claims against them arising from or in connection with the lease/sale agreement in Mississippi.  The Swareks retained an attorney in Germany to represent them.  Shortly before the Swareks dismissed their claims against Hermann in the Mississippi case, the attorney representing the Derr Heirs in the German case filed an application for admission *pro hac vice* in the Mississippi case, which was granted by the Chancery Court.

On August 31, 2010, the Regional Court declined to grant a declaratory judgment to the Derr Heirs, holding that they did not have a legitimate interest in a declaratory judgment, and had shown no need for legal protection.  The court stated that

> Given the fact that a case is already pending which deals comprehensively with the questions at issue in the form of an "action for performance" (*Leistungsklage*) and which must be recognized in Germany as well, it has to be noted that a contrary action seeking a negative declaratory judgment lacks the required legitimate interest in a declaratory judgment, but in any event lacks the need for legal protection.

(Answer Ex. 13 4, ECF No. 6-13).  The court stated that "the rights and legal position of the [Derr Heirs] are not threatened by the mere 'Motion to Substitute Parties' filed to the US Court." (*Id*. at 5).

The decision was appealed to the Higher Regional Court, which reversed the Regional Court on January 12, 2012, and held that the Derr Heirs were entitled to a declaratory judgment that the Swareks do not have any claims against them in connection with the lease/sale agreement.  (Compl. Ex. B 5, ECF No. 1-3).  The Higher Regional Court held that the document dismissing the Swareks' claims against Hermann "merely constitutes a unilateral statement, which is not contractually binding for the defendants." (*Id*. at 6).  According to German law, "the acknowledgment of the non-existence of a claim requires a contractual agreement, which the plaintiffs refuse to enter into, as is their right." (*Id*.).  The court explained:

> The validity of this withdrawal [of the complaint with respect to the deceased Mr. Hermann Derr in the Mississippi lawsuit] as well as the question whether it causes a procedural preclusion ("res judicata") with respect to the plaintiffs that did not become a party to the Mississippi proceeding can remain open.  Even if this were the case, in the event of an action filed against them plaintiffs would be required to prove that the res judicata effect extend to them.  Their interest in a declaratory judgment remains, because any ambiguity will be resolved at their expense.

(*Id*. at 7).

The court therefore granted a declaratory judgment, which it stated "would be recognized in most US American States due to guaranteed reciprocity as set forth in § 328 para. 1 no. 5 of the German Code of Civil Procedure," and would "also prevent the execution of a possible US judgment against the plaintiffs." (*Id*.).  The court went on the consider the merits of the claim against Hermann Derr, finding that under German law, it could not be shown that Hermann Derr had personal liability for the lease/sale agreement he signed in his personal capacity. (*Id*. at 8, 9).  The Swareks were ordered to pay the costs of the proceeding - 205,157.30 Euros, plus interest.  (Compl. Ex. D, ECF No. 1-5).

The Derr Heirs seek recognition by this Court of the German Judgment and Order for Costs on the basis of comity, and enforcement in United States dollars equivalent to the Judgment amount.[1]  (Compl. 2, ECF No. 1).

## DISCUSSION

The Derr Heirs state that they filed the German litigation to establish the non-existence of a legal relationship with the Swareks and to further determine that the Swareks had no claim for payment of monies against the German assets of the Derr Heirs.  (Derr Memo. in Support Mtn. Summ. J. 6, ECF No. 22).  They contend that this Court should not consider whether the German court properly construed Mississippi law in reaching its decision.  According to the Derr Heirs, the

---

[1] 205,157.30 Euros is equivalent to $276,126.95.

German court correctly applied German law to its analysis of the effect of the notice of voluntary dismissal in the Mississippi litigation. Thus, the German court correctly determined that the voluntary dismissal of Hermann Derr in the Mississippi litigation had no relevance to the cause of action in the German litigation.

The Swareks argue that they are not contesting the German court's ruling, "but the legal effect of the Swareks' voluntary dismissal with prejudice of Hermann Derr in the Mississippi Action is at issue." (Def. Rebuttal Memo. 11, ECF No. 28). They argue Mississippi courts would not grant comity for three reasons. First, the German judgment failed to recognize relevant, substantive Mississippi law in reaching its decisions. Second, the German judgment rendered the rights of the Mississippi parties in the Mississippi litigation meaningless. Third, the German judgment is repugnant to the public policy of Mississippi.

When jurisdiction is based on diversity, as in this case, state law governs the recognition and enforcement of foreign country judgments. *Success Motivation Inst. of Japan Ltd. v. Success Motivation Inst., Inc.*, 966 F.2d 1007, 1009 (5th Cir. 1992).[2] In Mississippi, enforcement of judgments from a foreign nation is governed by the principle of comity. *Laskosky v. Laskosky,* 504 So.2d 726, 729 (Miss. 1987). "In applying this principle, the trial judge exercises discretion." *Id.*

---

[2] For this reason, the Court finds inapplicable the Derr Heirs' citation to the Restatement (Third) of Foreign Relations Law § 481, as it concerns the foreign relations law of the United States.

Unfortunately, there is very little Mississippi law guiding the Court's exercise of discretion. In support of their request for comity, the Derr Heirs cite *The Society of Lloyd's v. Turner*, 303 F.3d 325 (5th Cir. 2002). The facts of the case are similar - the plaintiff was seeking to enforce money judgments entered by a foreign court - but the Fifth Circuit's analysis turned on the language of Texas' Uniform Foreign Country Money-Judgment Recognition Act. The Act establishes a procedure for recognition of a foreign judgment in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 36.0041, *et seq*. Foreign judgments are generally recognized and enforced except under certain circumstances.[3] The court rejected an argument that

---

[3] The "Grounds for Nonrecognition" are listed as follows:

(a) A foreign country judgment is not conclusive if:

    (1) the judgment was rendered under a system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law;

    (2) the foreign country court did not have personal jurisdiction over the defendant; or

    (3) the foreign country court did not have jurisdiction over the subject matter.

(b) A foreign country judgment need not be recognized if:

    (1) the defendant in the proceedings in the foreign country court did not receive notice of the proceedings in sufficient time to defend;

    (2) the judgment was obtained by fraud;

    (3) the cause of action on which the judgment is based is repugnant to the public policy of this state;

    (4) the judgment conflicts with another final and conclusive judgment;

    (5) the proceeding in the foreign country court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court;

    (6) in the case of jurisdiction based only on personal service, the foreign country court was a seriously inconvenient forum for the trial of the action; or

    (7) it is established that the foreign country in which the judgment was rendered does not recognize

the difference in the legal standard for proving a breach of contract case in English courts versus Texas courts rendered the English judgments contrary to Texas public policy under the Act. The Act requires that the "cause of action" be repugnant to the public policy of Texas, and Texas recognizes a cause of action for breach of contract. As Mississippi has not adopted the Uniform Foreign Country Money-Judgment Recognition Act, the *Society of Lloyd's* case is not directly applicable to this case.

The Derr Heirs also cite to the Restatement (Second) of Conflict of Laws. The relevant provision states that,

> A foreign nation judgment will not be recognized ii the United States unless the American court is convinced that the foreign court had jurisdiction and that there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it is sitting, or fraud in procuring the judgment. *Hilton v. Guyot*, 159 U.S. 113, 202 (1895). If these conditions are met, the judgment will not be refused recognition on the ground that the rendering court made an error of law or of fact.

Restatement (Second) of Conflict of Laws § 98 (1971). This provision has been incorporated into Mississippi law. *Laskosky v. Laskosky*, 504 So. 2d 726, 729 (Miss.

---

judgments rendered in this state that, but for the fact that they are rendered in this state, conform to the definition of "foreign country judgment."

Tex. Civ. Prac. & Rem. Code Ann. § 36.005 (West)

1987).

The provision was applied in *Carr v. Carr, supra*, where the court found that it would be against Mississippi public policy to recognize a divorce decree obtained by traveling to a foreign country when there was no intent to stay in the foreign country. *Carr*, 724 So. 2d at 939-40. Further, the husband had been denied a divorce in Mississippi and his travel to the foreign country to achieve it was an attempt to circumvent that denial. *Id*. Thus, the court affirmed non-recognition of the foreign divorce decree.

The Court finds further guidance in a case decided by the Court of Appeals for the District of Columbia Circuit - *Laker Airways, Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909 (D.C. Cir. 1984). In its discussion of the uncertain boundaries of comity, the court referred to *Hilton v. Guyot*, 159 U.S. 113 (1895), which is also the basis for Restatement (Second) of Conflict of Laws § 98. *Laker Airways*, 731 F.2d at 937. The D.C. appellate court considered a situation presenting issues similar to this case. While an anti-trust lawsuit was proceeding in federal district court, some of the defendants filed suit in the United Kingdom, and obtained an injunction forbidding further action against them in the federal district court. *Id*. at 915. The court stated:

> Comity ordinarily requires that courts of a separate sovereign not interfere with concurrent proceedings based on the same transitory claim, at least until a judgment is reached in one action, allowing res judicata to be pled in defense. . . . Since the action seeking to determine Laker's right to recover for anticompetitive injuries was first instituted in the United States, the initial opportunity to exercise

> comity, if this were called for, was put to the United Kingdom courts. No recognition or acceptance of comity was made in those courts. The appellants' claims of comity now asserted in United States courts come burdened with the failure of the British to recognize comity.

*Laker Airways Ltd.*, 731 F.2d at 939. Further, the court found that the purpose of the United Kingdom action was to interfere with or terminate the United States litigation. Comity was not required "where the British action was filed after the U.S. action for the sole purpose of interfering with the U.S. suit." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1069 (9th Cir. 2007). For these reasons, the D.C. appellate court found that the district court did not err by refusing to extend comity to the later-filed United Kingdom action. *Id*.

The German court in this case similarly had the "initial opportunity to exercise comity." The Mississippi litigation was ongoing at the time of the German Higher Regional court's judgment. The issue of the Derr Heirs' liability for the lease/sale agreement had been resolved in the Mississippi case by the voluntary dismissal with prejudice of claims against Hermann. It was not necessary for the German courts to intercede with an interpretation of the dismissal under German law. And regardless of whether the dismissal was effective or timely, the issue was pending in the Mississippi litigation and should have been left for the Mississippi court. Although the Derr Heirs contend they merely wanted to insure that the Swareks could not sue them in Germany, it is apparent that the German court understood differently; it stated that its declaratory judgment that the Swareks do not have any claims against the Derr Heirs in connection with the lease/sale

agreement would be recognized in "most US American States." There can be no doubt that the purpose of the German litigation was to interfere with the Mississippi litigation, as "the express purpose of an anti-suit injunction, be it offensive or defensive, is to block litigation in a separate forum." *Dependable Highway Exp., Inc.*, 498 F.3d at 1069. Under these circumstances, the Court will deny comity to the German judgment in the Derr Heirs' favor.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion [12] for Judgment on the Pleadings, filed by Thomas L. Swarek and joined by Thomas Anthony Swarek, is **GRANTED**. This case is **DISMISSED**.

**SO ORDERED AND ADJUDGED** this the 2nd day of December, 2013.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE